No. 22-35764

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

CASCADIA WILDLANDS, THE CENTER FOR BIOLOGICAL DIVERSITY, and AUDUBON SOCIETY OF PORTLAND

*Plaintiffs-Appellees*,

v.

SCOTT TIMBER CO., ROSEBURG RESOURCES CO., and RLC INDUSTRIES CO.,

*Defendants-Appellants*.

On Appeal from the
United States District Court for the
District of Oregon No. 6:16-CV-01710-AA
(District Judge Ann Aiken)

---

**PETITION FOR REHEARING EN BANC BY DEFENDANTS-APPELLANTS SCOTT TIMBER CO., ROSEBURG RESOURCES CO., AND RLC INDUSTRIES CO.**

---

Dominic M. Carollo, OSB# 093057
Carollo Law Group
Mail:   P.O. Box 2456
        Roseburg, OR 97470
Office: 2315 Old Highway 99 South
        Roseburg, OR 97471
Tel:    (541) 957-5900
dcarollo@carollolegal.com
*Attorney for Defendants-Appellants*
*Scott Timber Co., Roseburg Resources Co., and RLC Industries Co.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................... ii

RULE 35(B)(1) STATEMENT ..................................................................1

BACKGROUND ........................................................................................2

    A. Plaintiffs' Notice and Lawsuit........................................................2

    B. Proceedings Below. ........................................................................3

ARGUMENT ..............................................................................................5

    A. The Panel Opinion Conflicts with the D.C. Circuit's Decision in *Ashe* and Decisions of Other Circuits Interpreting Similar Pre-Suit Notice Requirements. ..................................................................................5

    B. The Panel's Decision Departs from Supreme Court Precedent and is Contrary to the Statutory Text, Context, and Structure.................................8

    C. The Panel's Standard for Adequate Notices Invites Inconsistency and Disagreement Among District Courts. .........................................12

    D. The Question Presented is Exceptionally Important...................14

CONCLUSION .........................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Alsea Valley All. v. Lautenbacher*,
   No. CV 05-6376-AA, 2006 WL 8460501 (D. Or. Apr. 25, 2006) ..................2, 13

*Carr v. Alta Verde Indus., Inc.*,
   931 F.2d 1055 (5th Cir. 1991) ................................................................8

*Cascadia Wildlands v. Scott Timber Co.*,
   105 F.4th 1144 (9th Cir. 2024) ..............................................................1

*Cascadia Wildlands v. Scott Timber Co.*,
   328 F. Supp. 3d 1119 (D. Or. 2018) ..............................................3, 4

*Coal. for Clean Air v. S. California Edison Co.*,
   971 F.2d 219 (9th Cir. 1992) ................................................................10

*Ctr. for Env't Sci., Accuracy & Reliability v. Cowin*,
   No. 115CV01852LJOBAM, 2016 WL 8730760 (E.D. Cal. Mar. 4, 2016) ....2, 13

*Forest Conservation Council v. Espy*,
   835 F. Supp. 1202 (D. Idaho 1993), *aff'd*, 42 F.3d 1399 (9th Cir. 1994)............11

*Forest Conservation Council v. Rosboro Lumber Co.*,
   50 F.3d 781 (9th Cir. 1995) ................................................................10

*Friends of Animals v. Ashe*,
   808 F.3d 900 (D.C. Cir. 2015)............................................ 1, 5, 6, 7

*Friends of Endangered Species v. Jantzen*,
   760 F.2d 976 (9th Cir. 1984) ................................................................11

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*,
   484 U.S. 49 (1987)............................................................ 2, 9, 10, 15

*Hallstrom v. Tillamook County*,
   493 U.S. 20 (1989).................................................... 2, 5, 8, 9, 14, 15

*Hamker v. Diamond Shamrock Chem. Co.*,
   756 F.2d 392 (5th Cir. 1985) ................................................................8

*Klamath Tribes v. United States Bureau of Reclamation*,
    No. 1:21-CV-00556-CL, 2023 WL 7182617 (D. Or. Sept. 11, 2023),
    *report and recommendation adopted sub nom. Klamath Tribes v. United States*
    *Bureau of Reclamation*, No. 1:21-CV-00556-CL, 2024 WL 471977 (D. Or. Feb.
    7, 2024) .................................................................................................... 13, 14

*Moden v. U.S. Fish & Wildlife Serv.*,
    281 F. Supp. 2d 1193 (D. Or. 2003) ............................................................2, 13

*Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*,
    143 F.3d 515 (9th Cir. 1998) ..................................................................... 9, 11, 14

*U.S. Pub. Interest Res. Grp. v. Atl. Salmon of Maine, LLC*,
    339 F.3d 23 (1st Cir. 2003)................................................................................7, 8

*Washington Trout v. McCain Foods, Inc.*,
    45 F.3d 1351 (9th Cir. 1995) ..............................................................................9

*Wildwest Inst. v. Kurth*,
    855 F.3d 995 (9th Cir. 2017) ..............................................................................1

**Statutes**

16 U.S.C. § 1539(a)(1)..........................................................................................15

16 U.S.C. § 1540(g)(1)(A) ............................................................................ 1, 7, 10

16 U.S.C. § 1540(g)(1)(C) ....................................................................................6

16 U.S.C. § 1540(g)(2)(A)............................................... 1, 3, 4, 6, 8, 10, 12, 14, 16

16 U.S.C. § 1540(g)(2)(C) ..................................................................................6, 13

33 U.S.C. § 1365....................................................................................................8

ORS § 321.550........................................................................................................3

ORS § 527.670(6) ..................................................................................................3

**Other Authorities**

Federal Defendants' Combined Opposition to Plaintiff's Motion for Summary
    Judgment, *Klamath Tribes*, 2023 WL 2644316 (D.Or.)......................................14

## RULE 35(B)(1) STATEMENT

Defendants-Appellants Scott Timber Co., Roseburg Resources Co., and RLC Industries Co. (hereafter "Scott Timber") respectfully petition for rehearing en banc of the June 26, 2024 Opinion of a panel of this Court (filed herewith; 105 F.4th 1144).

The panel decision presents a question of exceptional importance involving the Endangered Species Act's ("ESA") citizen suit provisions, which require a plaintiff to give an "alleged violator" at least 60 days' advance "notice of the violation" before bringing suit. 16 U.S.C. § 1540(g)(2)(A); *see also id.* § 1540(g)(1)(A) (notice must be given to one "who is alleged to be in violation of [the ESA]"). The question presented is whether a citizen-suit plaintiff complies with that provision by sending a purely "anticipatory" notice, raising concerns about potential future conduct and violations, at a time when the recipient is not "alleged to be in violation" of the ESA.

Rehearing of that question is warranted for two reasons:

1.     In holding that such "anticipatory" notices can comply with the ESA, the panel split sharply from *Friends of Animals v. Ashe*, 808 F.3d 900, 904 (D.C. Cir. 2015), which held that "pre-violation notice conflicts with the text of § 1540(g)." The panel decision here also muddies the law of this Circuit. *See Wildwest Inst. v. Kurth*, 855 F.3d 995, 1000 n. 4 (9th Cir. 2017) (citing *Ashe* with approval).

1

2.     In addition, the question is of exceptional importance because the panel departed from decisions of the Supreme Court, *see Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987); *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989), and its holding will exacerbate existing uncertainty and disagreement among district courts regarding the adequacy of "anticipatory" notices under the ESA's and other similar statutes' citizen suit provisions. *See, e.g.*, *Alsea Valley All. v. Lautenbacher*, No. CV 05-6376-AA, 2006 WL 8460501, at *2 n. 2 (D. Or. Apr. 25, 2006); *Moden v. U.S. Fish & Wildlife Serv.*, 281 F. Supp. 2d 1193, 1206 (D. Or. 2003); and *Ctr. for Env't Sci., Accuracy & Reliability v. Cowin*, No. 115CV01852LJOBAM, 2016 WL 8730760, at *5 (E.D. Cal. Mar. 4, 2016).

The Court should grant rehearing en banc to address these conflicts on issues of substantial public importance and establish a clear precedent on anticipatory notices that is faithful to the plain language of the statutory text and maintains consistency with Supreme Court decisions requiring strict construction of pre-suit notice requirements.

## BACKGROUND

**A.     Plaintiffs' Notice and Lawsuit.**

Plaintiffs commenced this lawsuit on August 25, 2016, alleging a potential future violation of the ESA concerning a 49-acre timber harvest on private forestland owned by Scott Timber, following Scott Timber's submission of a Notification of

Operations and Application for Permit ("NOAP") to the Oregon Department of Forestry on August 13, 2016.[1] Op. 7—8; 2-ER-399—421. Instead of providing Scott Timber and the U.S. Fish and Wildlife Service with notice that this specific harvest would violate the ESA, Plaintiffs relied on a notice letter that they had sent more than two years earlier, in 2014, long before the harvest in question (or, indeed, any harvest) had been planned or even conceived of, and before Scott Timber had surveyed any of the parcels for murrelet occupation. Op. 7; 2-ER-394; 2-ER-385—390. The 2014 notice had asserted in an omnibus fashion that *any future* timber harvest (apparently including cutting of even a single tree) that might occur anywhere on 1,400 acres of land owned at the time by the State of Oregon, would violate the ESA. Op. 7; 2-ER-394; 2-ER-385—390.

**B.    Proceedings Below.**

Scott Timber moved to dismiss on the ground that Plaintiffs' anticipatory "pre-violation" notice did not satisfy 16 U.S.C. § 1540(g)(2)(A)(i). The District Court recognized a "split of authority" on the validity of anticipatory notices. *Cascadia Wildlands v. Scott Timber Co.*, 328 F. Supp. 3d 1119, 1131 (D. Or. 2018); 1-ER-139. But the trial court rejected Defendants' plain-language argument that the statutory text imposed a "bright-line rule against anticipatory notice of future

---

[1] Under Oregon law, an operator must file a NOAP with the State before commencing a timber harvest operation. ORS § 321.550;  ORS § 527.670(6).

violations." *Cascadia Wildlands*, 328 F. Supp. 3d at 1131; 1-ER-139. Instead, the District Court looked to (its understanding of) "Congress' overriding purpose" and "[l]egislative history" to apply an amorphous "overall sufficiency of the notice" standard and upheld the notice given here. *Cascadia Wildlands*, 328 F. Supp. 3d at 1130—1132; 1-ER-136—140.

The panel affirmed. It started by overruling longstanding Circuit precedent to hold that pre-suit notice under 16 U.S.C. § 1540(g)(2) is not a "jurisdictional" requirement. Op. 9—15. Finding that Defendants had preserved their notice objection, the panel applied the same facts-and-circumstances "overall sufficiency" test to hold that Plaintiffs' letter, discussing any potential future harvests within a 1,400-acre area, gave Defendants enough notice as to the 49-acre harvest that was developed and proposed two years later. Op. 17—21. In response to the concern that § 1540(g)(2)(A) requires notice to a party "alleged to be in violation" (present tense), the panel dismissed the "anticipatory" nature of Plaintiffs' notice as of "no import." Op. 20. Making no effort to reconcile its approach with the statutory text, the panel reasoned that anticipatory *notices* must be allowed because certain prior panel decisions of this Court entertained citizen-suit claims on the *merits* "for prospective violations." Op. 20. The panel declined to adopt a "bright-line rule on anticipatory notices," instead favoring a fact-intensive, totality-of-the-circumstances approach. *Id*.

**ARGUMENT**

**A.    The Panel Opinion Conflicts with the D.C. Circuit's Decision in *Ashe* and Decisions of Other Circuits Interpreting Similar Pre-Suit Notice Requirements.**

The panel decision here starkly conflicts with the D.C. Circuit's precedent in *Ashe*, a unanimous panel decision authored by then-Judge Kavanaugh, holding that "pre-violation notice conflicts with the text of § 1540(g)." 808 F.3d at 904. Other Circuits align with *Ashe* in interpreting materially-identical pre-suit notice requirements. This Court should grant rehearing en banc to resolve this circuit split.

*Ashe* held that an ESA plaintiff had failed to comply with the statutory pre-suit notice requirement in § 1540(g) where its notice letter predated the time when the defendant (there, the Fish and Wildlife Service) could be alleged to have violated any duty under the ESA, and thus the letter "d[id] not give notice of an *existing* violation of [law]." 808 F.3d at 904—905 (emphasis in original). The panel in *Ashe* emphasized that under the ESA, "[n]otice 'is a mandatory, not optional, condition precedent for suit,'" *id.* at 903 (quoting *Hallstrom*, 493 U.S. at 26), and the "notice requirement . . . serves the important purpose of giving the [notice recipient] 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit,'" *id.* at 904 (quoting *Hallstrom*, 493 U.S. at 29). With careful attention to statutory text, the D.C. Circuit held that the ESA's statutory notice requirement "compels" the conclusion that the notice given there was

inadequate because § 1540(g) requires "notice . . . of an alleged failure to perform some nondiscretionary act or duty *that exists at the time of the notice*." *Id.* at 904 (emphasis added). While *Ashe* applied the pre-suit notice requirement of 16 U.S.C. § 1540(g)(2)(*C*), for several reasons the case's rationale and holding apply equally to the parallel and closely similar language in (g)(2)(A).

First, the relevant notice provisions textually track each other. Section 1540(g)(2)(*C*) provides that "[n]o action may be commenced under subparagraph (1)(C) of this section *prior to sixty days after written notice has been given to the Secretary*." *Id.* (emphasis added). Meanwhile, § 1540(g)(2)(A) provides that "[n]o action may be commenced under subparagraph (1)(A) of this section *prior to sixty days after written notice of the violation has been given to the Secretary*, and to any alleged violator of any such provision or regulation." *Id.* (emphasis added). Given this similarity, there is no textual basis to read § 1540(g)(2)(C) as a bar to anticipatory notices (as in *Ashe*) but § 1540(g)(2)(A) as permitting them (as the panel here held).

Second, statutory context points in the same direction. § 1540(g)(2)(C) is the notice provision for citizen suits "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary," pursuant to § 1540(g)(1)(C). As then-Judge Kavanaugh reasoned in *Ashe*, giving notice at a time when the Secretary did

not face a statutory obligation to take a particular action could not "give notice of an *existing violation* of a nondiscretionary duty. Rather, it provides notice only of a *possible future violation* of a duty that may never arise." 808 F.3d at 904 (emphasis added). The same reasoning applies to an action under § 1540(g)(1)(A) for actions "to enjoin any person . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof[.]" Both provisions use the present tense to require notice of an "existing violation," not notice of some potential, hypothetical future violation. Once again, there is no textual or contextual reason for treating the two provisions differently; neither allows for anticipatory notices. For these reasons, the panel decision here cannot be reconciled with *Ashe*, which held that anticipatory notices do not satisfy §1540(g), interpreting statutory provisions that are not materially distinguishable from § 1540(g)(1)(A) or § 1540(g)(2)(A).

Nor can the panel decision be reconciled with decisions of other circuits interpreting pre-suit notice requirements that are worded in materially-identical ways to the ESA provision here. To take just one example (*see* Opening Br. 25 n.7), the First Circuit has interpreted the Clean Water Act's notice provisions to provide that "only citizen suits alleging that defendants are *in violation*" of the statute "*at the time suit is brought* are cognizable." *U.S. Pub. Interest Res. Grp. v. Atl. Salmon of Maine, LLC*, 339 F.3d 23, 33 (1st Cir. 2003) (emphases added). *Atlantic Salmon*

interpreted a provision that, like the ESA, authorizes suit "against any person . . . alleged to be in violation of [the Act]," but only "sixty days after the plaintiff has given notice of the alleged violation . . . to any alleged violator[.]" 33 U.S.C. § 1365(a)-(b); *see also Hallstrom*, 493 U.S. at 23 n.1 (1989) (notice provisions of Clean Water Act and Endangered Species Act "patterned" on same statute). Under the Clean Water Act, the First Circuit emphasized, "if the suit alleges . . . no present violation, it is subject to dismissal[.]" 339 F.3d at 33. Other circuits are in accord. *E.g. Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991); *Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392, 395 (5th Cir. 1985).

## B. The Panel's Decision Departs from Supreme Court Precedent and is Contrary to the Statutory Text, Context, and Structure.

Even putting aside the conflict among circuit courts, rehearing en banc is warranted because the panel's endorsement of purely anticipatory notices departs from governing Supreme Court precedent and the plain statutory text. The pre-suit notice letter here failed to comply with § 1540(g)(2)(A)(i) because it did not allege that Defendants were "in violation" of the ESA. Nor could it. At the time the letter was sent, Scott Timber did not own the land in question, had not surveyed it for murrelets, and had no specific plans to harvest timber; it would not propose an actual harvest plan, on particular acreage, until two years later. 2-ER-394; 2-ER-406—407; SER-82. Thus, at the time of the notice, Scott Timber was not, and could not be, an "alleged violator" of the ESA, § 1540(g)(2)(A)(i).

Supreme Court precedent confirms that pre-suit notice provisions must be interpreted according to their ordinary meaning, with strict fidelity to the statutory text. *Hallstrom*, 493 U.S. at 31, held that RCRA's 60-day notice requirement (on which the ESA's provision was "patterned") is a "mandatory precondition to suit." The Court insisted on a "strict construction of the notice provision" rather than the "flexible" or "pragmatic" approach urged by the plaintiffs in that case, that would have subordinated "the balance struck by Congress in developing the citizen suit provisions" in favor of pragmatic or policy-driven concerns. *Id.* at 30—31. Prior to the panel decision here, this Court had repeatedly relied on *Hallstrom* in requiring parties to "strictly comply" with the ESA's notice requirement. *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998).[2] The panel's disregard of § 1540(g)'s ordinary meaning, in favor of a court-made rule that Plaintiffs' anticipatory notice here was "sufficient" or "adequate" under a facts-and-circumstances approach, cannot be reconciled with the "strict construction" required by *Hallstrom* and this Court's precedent.

Nor can the panel decision here be squared with *Gwaltney of Smithfield,*, 484 U.S. 49. There, the Supreme Court interpreted the present-tense language in the Clean Water Act's citizen-suit provision—which closely parallels the ESA textually

---

[2] *See also Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir. 1995) (Clean Water Act's parallel pre-suit notice provisions must be "strictly construed" under *Hallstrom*).

and structurally—to hold that citizen-suits may not be brought for "wholly past" violations. The Court explained that the "purpose of notice to the alleged violator is to give it an opportunity to bring itself into compliance with the Act and thus likewise render unnecessary a citizen suit," *id.* at 60, supporting the conclusion that a citizen-suit plaintiff must allege "a state of either continuous or intermittent violation," *id.* at 57.

As in *Gwaltney*, § 1540(g)(1)(A)'s use of the present tense in authorizing citizen suits against any person "who is alleged to be *in violation of*" the ESA "suggests a focus on current violations." *See Coal. for Clean Air v. S. California Edison Co.*, 971 F.2d 219, 224 (9th Cir. 1992); *see also Gwaltney*, 484 U.S. at 59. The parallel notice provision, § 1540(g)(2)(A)(i), requires that notice be sent to an "alleged violator" of the ESA, again focusing on the present nature of the violation to be noticed.[3]

This interpretation furthers the intent of 16 U.S.C. § 1540(g)(2)(A)(i). "The purpose of the 60–day notice provision is to put the [recipient] on notice of a

---

[3] In *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781 (9th Cir. 1995), the panel concluded that an *imminent* threat of injury can support a merits determination that there has been a "violation" of the ESA. The court did not address whether the suit satisfied the 60-day notice requirement. *Cf. id.* at 786. Even assuming that notice of an imminent ESA violation could satisfy the statutory notice requirement, this case does not present that question. Here, unlike in *Rosboro*, it is undisputed that the notice letter was sent years before Defendants had developed any actionable harvest plan, at a time when there was no imminent threat of take.

perceived violation" and to give them "an opportunity to review their actions and take corrective measures" and a chance for "settlement or other resolution of a dispute without litigation." *Forest Conservation Council v. Espy*, 835 F. Supp. 1202, 1210 (D. Idaho 1993), *aff'd*, 42 F.3d 1399 (9th Cir. 1994). Upholding purely anticipatory notices—and allowing suits to proceed without a 60-day notice period focusing on an actual violation—interferes with regulators' ability to take corrective measures, settle, or resolve disputes under the ESA. *See Sw. Ctr. for Biological Diversity*, 143 F.3d at 520 .

Indeed, here, the U.S. Fish and Wildlife Service did not even reach out to Scott Timber until Scott Timber filed a notice with state regulators proposing an actual specific harvest. 8-ER-1681. Instead of allowing Defendants time to engage with the Fish and Wildlife Service—a process that potentially could have yielded a permit under Section 10 of the ESA expressly *authorizing* the harvest in question notwithstanding a specified level of "take," *Friends of Endangered Species v. Jantzen*, 760 F.2d 976, 982 (9th Cir. 1984)—the Plaintiffs forced immediate litigation. In so doing, the Plaintiffs pretermitted a statutory process designed to

encourage non-adversarial interactions between private parties and regulators.[4] At best, Plaintiffs' notice apprised Scott Timber of Plaintiffs' *anticipation* that Scott Timber would, *one day*, plan a timber harvest that would violate the ESA. A strict construction of § 1540(g)(2)(A)(i) leaves no room for such anticipatory notices. Rehearing en banc is warranted to ensure fidelity to the plain meaning of § 1540(g)(2)(A)(i).

## C. The Panel's Standard for Adequate Notices Invites Inconsistency and Disagreement Among District Courts.

In bypassing the clear rule prescribed by the statutory text, and instead applying an amorphous "overall sufficiency" test to uphold anticipatory notices in some circumstances but not others, the panel invited inconsistent and arbitrary results in the lower courts, a trend that has already begun to develop. This Court should grant rehearing en banc to ensure fidelity to the statutory text, which provides a much clearer and more easily administrable standard where a plaintiff attempts to rely on an anticipatory notice.

---

[4] Plaintiffs' anticipatory notice meant that the Fish and Wildlife Service ("FWS") never received notice of Defendants' 49-acre timber harvest until *after* litigation had ensued. 8-ER-1681; 1-ER-128. Had FWS received notice *prior* to Plaintiffs' initiation of a lawsuit and motion for a preliminary injunction (2-ER-395), Defendants may have been able to work with FWS to take "[a]voidance or impact minimization measures … include[ing] alternate prescriptions involving commercial thinning or making adjustments to the areas to be harvested," which the FWS stated "should allow for Scott Timber to proceed with forest management activities … [and] would appropriately address the potential harm to marbled murrelets." 8-ER-1681.

For instance, *Ctr. for Env't Sci., Accuracy & Reliability v. Cowin* rejected an anticipatory notice under § 1540(g)(2)(A)(i). There, the plaintiffs' notice alleged past ESA violations, and unspecified possible future violations. No. 115CV01852LJOBAM, 2016 WL 8730760, at *5 (E.D. Cal. Mar. 4, 2016). The district court found that, "[t]o the extent the Notice Letter refers to anticipatory violations, those violations are not actionable." *Id*. Courts have reached similar conclusions under § 1540(g)(2)(C). For example, *Alsea Valley Alliance v. Lautenbacher*, 2006 WL 8460501, rejected an anticipatory notice. There, the plaintiffs sent notice to federal regulators that certain regulations would violate the ESA—some eight months before the agency actually finalized the regulations in question. *Id*. at 2 n. 2. The district court correctly rejected the adequacy of that notice, holding that "an agency cannot commit an ESA violation, and a citizen cannot give notice of an alleged violation, until the agency renders its final decision." *Id*.; *accord Moden*, 281 F. Supp. 2d at 1206 (similar).

In contrast, *Klamath Tribes v. United States Bureau of Reclamation*, No. 1:21-CV-00556-CL, 2023 WL 7182617 at *13—14 (D. Or. Sept. 11, 2023), *report and recommendation adopted sub nom. Klamath Tribes v. United States Bureau of Reclamation*, No. 1:21-CV-00556-CL, 2024 WL 471977 (D. Or. Feb. 7, 2024), held that the plaintiff's notice was "overall sufficient" on the particular facts presented; the court declined to adopt a rule that anticipatory notices were invalid as a matter

of law. *Id.* Tellingly, in that case, as in many others, the United States had urged the court to apply the plain statutory text of 16 U.S.C. § 1540(g)(2)(*A*)(i), under which "anticipatory or pre-violation notice letters do not satisfy the ESA's notice requirement."[5]

So long as this Court retains an amorphous "overall sufficiency" standard for anticipatory notices, disarray will persist in the lower courts. The Court should grant rehearing en banc to require fidelity to the statutory text and give clear guidance to district courts.

## D.    The Question Presented is Exceptionally Important.

The panel's decision has significant practical implications for land managers, government entities, and those who work around protected species. The opinion effectively holds that notices sent months or years before any conceivable violation are acceptable as long as they describe the general kinds of actions that *could, one day,* trigger a citizen suit. The panel has, for instance, opened the door to citizen suits against federal land managers alleging potential future concerns about not-yet-taken decisions across thousands or millions of acres of federal land. It invites pre-emptive

---

[5] *See* Federal Defendants' Combined Opposition to Plaintiff's Motion for Summary Judgment, *Klamath Tribes*, 2023 WL 2644316 (D.Or.) (citing *Ashe*). The government further argued that that the "overall sufficiency" of the notice is irrelevant where the plaintiff does not satisfy the plain statutory requirements. *Id.* (quoting *Sw. Ctr. for Biological Diversity*, 143 F.3d at 520; *Hallstro*m, 493 U.S. at 26, 30).

ESA lawsuits against private and government defendants, prior to or immediately upon the conclusion of planning or decision-making processes. This would defeat one of the central purposes of the citizen suit provision, inundating the consulting agencies (U.S. Fish and Wildlife Service and National Marine Fisheries Service) with notices of prospective violations that are not yet ripe for agency intervention, while also cutting off the alleged violator's opportunity to work constructively with federal regulators in a manner the ESA expressly anticipates and condones. *See* 16 U.S.C. § 1539(a)(1) ("The Secretary may permit, under such terms and conditions as he shall prescribe . . . (B) any taking otherwise prohibited by section 1538(a)(1)(B) of this title if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity"). By inviting plaintiffs to bypass the 60-day notice requirement through blanket anticipatory notices, the panel has thwarted the "balance knowingly struck by Congress in developing the citizen suit provisions[.]" *Hallstrom*, 493 U.S. at 21; *id.* at 29 ("notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits." (citing *Gwaltney*)); *see also Gwaltney*, 484 U.S. at 60 ("The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action.").

This Court should grant rehearing en banc to apply the unambiguous meaning of the statutory text, and avoid exacerbating a circuit split, by holding that anticipatory notices do not satisfy § 1540(g)(2)(A).

## CONCLUSION

The Court should grant rehearing en banc, reverse the judgment of the district court, and remand with direction that the case be dismissed.

**DATED** this 9th day of August, 2024.

CAROLLO LAW GROUP

*s/ Dominic M. Carollo*
Dominic M. Carollo, OSB# 093057
Carollo Law Group
Mail: P.O. Box 2456
     Roseburg, OR 97470
Office: 2315 Old Highway 99 South
     Roseburg, OR 97471
Tel: (541) 957-5900
dcarollo@carollolegal.com
*Attorney for Defendants-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 22-35764

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App.
P. 32(a)(4)-(6) and **contains the following number of words**: | 3,690 |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

◯ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Dominic M. Carollo | **Date** | Aug 9, 2024

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11**                                             *Rev. 12/01/2021*